IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| SHARON A. MARKS, | ) |
| Petitioner, | ) Case No. CV 06-451-S-MHW |
| v. | ) **MEMORANDUM DECISION** |
|  | ) **AND ORDER** |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner of Social Security Administration, | ) |
| Respondent. | ) |

## Introduction

Currently pending before the Court for its consideration is Petitioner Sharon A. Marks' ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed November 9, 2006. The Court has reviewed the Petition for Review, the Answer, the parties' memoranda, and the administrative record (AR) and, for the reasons that follow, will remand this action to the Commissioner for further administrative proceedings in accordance with this Order.

---

[1] Michael J. Astrue is substituted for his predecessor, Joanne B. Barnhart, as Commissioner of Social Security Administration. Fed. R. Civ. P. 25(d).

**Memorandum Decision and Order - Page 1**

# I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on July 9, 2003, alleging disability due to chronic headaches. Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Hayward C. Reed held a hearing on November 1, 2005, taking testimony from Petitioner; Petitioner's mother, Janet Peterson; treating physician Dr. Ronald Higginbotham; psychological expert witness Kristy Farnsworth, Ph. D.; and vocational expert Anne Aastum. (AR 931-1014.) ALJ Reed issued a decision finding Petitioner not disabled on January 9, 2006. (AR 17-27.)

Petitioner filed a timely appeal to the Appeals Council which denied her request for review, making the ALJ's decision the final decision of the Commissioner. (AR 6-9.) Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 39 years old. She has a high school education and her past relevant work includes electronic component processor, group leader of semi-conductor processing, and wire harness assembler.

# II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner

alleged an onset date of October 23, 1996 and last engaged in substantial gainful activity in 1997. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found that Petitioner's chronic headaches are "severe" within the meaning of the Regulations.[2] Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for a listed impairment. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was able to perform her past relevant work as electronic component processor, group leader of semi-conductor processing, and wire harness assembler. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. Having found Petitioner not disabled at step four, the ALJ did not proceed to step five.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C.

---

[2] The ALJ found that the conditions of depression, somatoform disorder, and obesity were not medically determinable "severe" impairments. Petitioner does not dispute this finding.

**Memorandum Decision and Order - Page 3**

§ 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Id.*  It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner."  *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

**Memorandum Decision and Order - Page 4**

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred in that his negative finding regarding Petitioner's credibility was not based on substantial evidence in the record, and he did not set forth clear reasons for rejecting the opinion of treating physician Dr. Ronald Higginbotham. More specifically, with respect to discrediting her testimony, Petitioner contends that the ALJ (1) mischaracterized the treatment notes from several treating sources, (2) relied heavily on an inaccurate interpretation of surveillance records from Petitioner's disability claim with her long term disability carrier, (3) determined that Petitioner tried to buttress her case with incorrect testimony, and (4) misinterpreted hers and Dr. Higginbotham's testimony regarding the nature of her headaches and the impact on her functioning. With respect to Dr. Higginbotham, she contends that the ALJ failed to properly support his rejection of his uncontroverted medical opinion with clear and convincing reasons since he based his rejection on his misinterpretation of Dr. Higginbotham's testimony and medical records as well as his misinterpretation of the surveillance video. The Court will address each of these arguments in turn.

A.      **Petitioner's Credibility**

Petitioner argues that the ALJ made several errors in rejecting her testimony. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Id*. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Id*. General findings are insufficient, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of

**Memorandum Decision and Order - Page 6**

medications; and treatment measures taken by claimant to alleviate those symptoms.  See Soc. Sec. Ruling 96-7p.

Here, the ALJ found that Petitioner's allegation of total disability due to her headaches was not credible.  (AR 22.)  He based his finding on the following factors: (1) that the July 2000 surveillance investigation "unequivocally demonstrated that [Petitioner] was not disabled, and could function adequately in a routine work setting;" (2)  that her long-term disability carrier denied benefits based on the surveillance investigation; (3) that there was a discrepancy between Petitioner's insurance documentation where she admitted the activities on the surveillance video and her testimony at the hearing that the surveillance video depicted her sister which he characterized as Petitioner's attempt "to buttress her case with incorrect testimony;"  (4) that treatment records indicating positive statements such as "significant relief," "considerable improvement," and headaches improvement "a big victory" conflicted with a claim of disability, and (5) that her level of pain was inconsistent with the record and her activities of daily living. (AR 22-24.)

As stated above, it is the ALJ's job to determine credibility.  *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002).   If the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The issue is not whether the Court agrees with the ALJ's credibility assessment, but whether the assessment is sound.  It is axiomatic, however, that the stated findings of the ALJ must be accurate representations of the evidence.  The ALJ's findings here appear to be inaccurate in a number of significant respects.

**Memorandum Decision and Order - Page 7**

      1.      **Surveillance Report and Video**

Petitioner had received long term disability insurance benefits for several years from Unum Life Insurance Co. due to her chronic headaches.  However, Unum Life terminated these benefits based on a surveillance video taken over a three-day period which, in Unum Life's view, showed Petitioner engaging in several activities that were inconsistent with her claim that she was completely disabled.  (AR 69-74.)  Petitioner retained an attorney to dispute the denial of benefits and ultimately settled with Unum for $100,000.  (AR 66-68.)  As stated above, the ALJ referred to a discrepancy between Petitioner's statements to the Unum and her testimony regarding the surveillance video as an attempt to buttress her testimony with "incorrect testimony."  The statement to which he referred is a letter Petitioner wrote to the insurance company after it initially denied her claim.  (AR 73-74.)  It is obvious in reading the letter that Petitioner had not seen the video and was just assuming she was the individual depicted in the entire video.  (AR 73, ¶ 3.)  She is merely theorizing what they must have seen her doing.  It is not even clear that she had seen the surveillance report at that time.  On the other hand, when Petitioner testified at the hearing that the surveillance report was in error, she had the benefit of having watched the video.  She cited an example of where the video showed that it was her sister, and not she, who was walking her child around the block.  (AR 979-81.)  Even the surveillance report itself stated, "It was subsequently developed that this female was the claimant's sister."  (AR 79.)  Therefore, it does not appear that Petitioner testified "incorrectly."

The ALJ also stated that the video documentation showed that she drove alone – "without adult supervision" – with a child "on an 8-hour basis."  (AR 23.)   However, the surveillance report completely rebuts the ALJ's statement.  For example, it specifically indicates on the morning of June 21, 2000, that "another female" entered Petitioner's car.  (AR 81.)  It later refers

**Memorandum Decision and Order - Page 8**

to "the elderly female" that was accompanying her.  (AR 82.)   It refers to Petitioner "along with the other passengers."  (AR 83.)  It states in the late afternoon that Petitioner was walking through the mall "accompanied by the elderly women."  (AR 85.)  On June 22, 2002, the surveillance report indicates that "an elderly female" accompanied Petitioner to Starbucks in the morning.  (AR 88.)  It states later in the afternoon that Petitioner and an "older female" are together.  (AR 92.)

Based on the obvious conflict between what the surveillance report says and the ALJ's findings, any adverse credibility determination related to the surveillance report is not supported by substantial evidence.

### 2.     Activities of Daily Living

Another basis of the ALJ's credibility determination is his opinion that Petitioner's activities of daily life reported in the Daily Activity Questionnaire conflicts with her alleged limitations.  The ALJ identifies those activities as doing laundry, washing dishes, dusting, vacuuming, taking care of her personal need, caring for her child, grocery shopping, watching TV, listening to the radio, and socializing with friends and relatives.  (AR 24; 355-59.)  A review of the Daily Activities Questionnaire, however, reveals that the ALJ has mischaracterized Petitioner's responses.  For example, Petitioner's responses are replete with references that her ability to accomplish the various tasks depends on the level of pain on any given day.  In fact, she specifically checked "Yes" in response to the question of whether she needs assistance with dusting, laundry, dishes, and vacuuming.  (AR 356, ¶ 7).  She also stated that she needs assistance dressing and bathing when her headaches are above a certain level of intensity.  (AR 356, ¶ 5.)  Although the ALJ indicates that Petitioner socializes with friends and relatives, a review of the responses to the questionnaire reveals very little socializing with friends and

**Memorandum Decision and Order - Page 9**

socializing with relatives is often associated with helping her with child care or chores.  (AR 358-59.)  In fact, Petitioner responded that she does not do much with anyone except her family because they know what to do when a headache occurs.  (AR 359, ¶ 20.)  Based on the ALJ's mischaracterization of Petitioner's activities of daily living, any adverse credibility determination based thereon is not supported by substantial evidence.

Even if Petitioner were able to perform the stated activities without assistance, an adverse credibility determination does not necessarily follow.  The Ninth Circuit has consistently held that performance of certain daily activities does not negatively impact credibility unless the description of the activities contradicts other testimony or the activities meet the threshold for transferable work skills.  *See Orn v. Astrue*, No. 05-16181, 2007 WL 2034287, at *12-13 (9th Cir. July 16, 2007).  To support an adverse credibility determination, the ALJ must make specific findings concerning the transferability of daily activities to the workplace.  *Id*. at *13.  Specifically pertinent to the ALJ's findings regarding her ability to watch TV, the Ninth Circuit has recognized that watching TV is not so demanding as to bear a meaningful relationship to workplace activities.  *Id*.  It also recognizes that even though some activities may appear to be transferable, they are in fact not always easily transferable to the workplace where periodic breaks for resting and taking medication are not possible.  *Id.* (citing *Fair v. Bowen*, 885, F.2d 597, 603 (9th Cir. 1989)).

Here, Petitioner's testimony and that of others does not contradict her responses to the questionnaire.  She has specifically maintained that she can function to some degree when she does not have a headache but is incapacitated when she is experiencing severe headaches.  Furthermore, in addition to mischaracterizing Petitioner's responses, the ALJ did not make any specific findings as to whether any of her daily activities are transferrable to a work

**Memorandum Decision and Order - Page 10**

environment.³  Accordingly, the ALJ's reasons for rejecting Petitioner's testimony on this ground are legally insufficient.

        **3.**      **Treatment Notes**

The references in the treatment notes regarding significant relief, or considerable improvement, and the like are taken out of context.  Several of the references were in treatment notes entered as long as 10 years ago and referred to an improvement during a specific headache episode.  Others reflect an improvement from the years when Petitioner's headaches were almost daily to the present time when they occur twice a month, although affecting her for two or three days each time.  In any event, any perceived conflict between those isolated statements in treatment notes and Petitioner's claim of disability does not constitute substantial evidence to support the ALJ's adverse credibility finding.

**B.**      **Rejection of Treating Physician's Opinion**

There are three types of physicians distinguished in the regulations implementing Title II and Title XVI of the Act: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining or reviewing physicians.)  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001).  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  In general, a treating physician's opinion is given more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a reviewing physician's opinion.  *Holohan*, 246 F.3d at 1202.   An ALJ is not bound by a physician's opinion of a petitioner's physical condition or the ultimate issue of disability.  *Magallanes v. Bowen*, 881 F.2d 747, 751

---

³ The ALJ also referred to Petitioner's activities document in the surveillance report and/or video.  Those activities included going to the mall, going to Starbucks, going to the hair salon, and lifting her child.  However, the ALJ did not make any specific findings as to whether those activities are transferrable to a work environment.

**Memorandum Decision and Order - Page 11**

(9th Cir. 1989).  Furthermore, an ALJ may reject a treating or examining physician's uncontradicted opinion for "clear and convincing" reasons.  *Id.*

Here, the ALJ gave little weight to Dr. Higginbotham's opinions on disability because he found them to be inconsistent with the doctor's own testimony and treatment notes as well as with Petitioner's activities of daily living and the documented record.  (AR 24.)  However, as shown above, the ALJ mischaracterized Petitioner's activities of daily living and took the statements regarding improvement out of context.  The ALJ essentially questions how Dr. Higginbotham's statements in the treatment notes that Petitioner's headaches have considerably improved can be reconciled with his statements in the same documents that she is still disabled.  (AR 25.)  However, it is apparent to the Court that Dr. Higginbotham is referencing relative improvement within the context of disability.  Considerable or significant improvement does not necessarily remove one from the realm of disability.  Dr. Higginbotham consistently testified that although Petitioner's headaches have improved from almost constant to twice a month, in his opinion, she is still disabled because of their unpredictability and the fact that each headache is followed by two days of recovery.  (AR 943-60.)

The Court notes that Dr. Higginbotham's opinions and testimony are not contradicted by another doctor.  Indeed, the ALJ refers to the opinion of Dr. Draper as indicating Petitioner was disabled due to her headaches.  (AR 25.)  However, rather than finding his opinion as corroborative of Dr. Higginbotham's, the ALJ rejects Dr. Draper's opinion as well for the same reasons he rejects Dr. Higginbotham's opinion.  (AR 25.)

The Court recognizes that the ALJ is not bound by a physician's opinion on the ultimate issue of disability.  However, the ALJ may only reject a treating physician's uncontradicted opinion for clear and convincing reasons.  The Court finds that the ALJ's stated reasons for

**Memorandum Decision and Order - Page 12**

rejecting Dr. Higginbotham's opinion are not clear and convincing

**C.      Lay Witnesses**

Although not raised by Petitioner, the Court notes that the ALJ disregarded the testimony of Petitioner's mother that corroborated her testimony regarding her daily activities.  The ALJ must take lay testimony regarding a claimant's symptoms into account or else expressly disregard the testimony and state legitimate reasons for doing so.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (finding error where ALJ failed to include testimony of claimant and his wife regarding her coughing symptoms or expressly state that he would discount their testimony and give legitimate reasons).  Lay testimony regarding symptoms or how impairment affects ability to work is competent evidence and cannot be disregarded without comment.  *Nguyen*, 100 F.3d at 1467.

The ALJ rejected Petitioner's mother's opinion because it was solely based on her own observations rather than on medical signs and findings and because it was inconsistent with Petitioner's activities of daily living and the surveillance video.  (AR 25.)  However, as stated above, the ALJ has mischaracterized both Petitioner's responses to the daily activities questionnaire and the surveillance video.  Therefore, the ALJ has not stated legitimate reasons for disregarding her testimony.

**V.
Conclusion**

Based on its review of the entire record, the Court finds it necessary for this matter to be remanded to the Commissioner of the Social Security Administration for further administrative proceedings.  In accordance with this decision, the Commissioner must reevaluate Petitioner's credibility based on an accurate review of the evidence.  If the ALJ chooses to discount the

medical opinion of the treating physician, it must be supported by clear and convincing reasons supported by substantial evidence in the record. The Commissioner may also wish to consider whether the Petitioner should have an independent medical examination by a neurologist.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)   Plaintiff's Petition for Review (Docket No. 1) is GRANTED.

2)   This action shall be REMANDED to the Commissioner for review in accordance with this order.

3)   This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: August 31, 2007

Honorable Mikel H. Williams
Chief United States Magistrate Judge